## THOMPSON et ux. v. INVESTORS' SYNDI-CATE.

### No. 12681.

Court of Civil Appeals of Texas. Fort Worth.

July 16, 1932.

Rehearing Denied Sept. 24, 1932.

John L. Poulter, of Fort Worth, for appellants.

Geo. T. Burgess, of Dallas, and R. H. Kniseley, of Fort Worth, for appellee.

CONNER, C. J.

Appellee in this case, the Investors' Syndicate, a foreign corporation, instituted this suit against T. J. Thompson and wife to recover title and possession of lot 7, in block 9, of M. G. Ellis' addition to the city of Fort Worth, Tex. Plaintiff's petition is in the ordinary form of trespass to try title, in answer to which Thompson and wife presented a general demurrer, a general denial, a plea of not guilty, and specially to the effect that plaintiff was claiming title under a mortgage dated December 21, 1928, and a trustee's sale thereunder; that, at the time of the execution of the mortgage and the sale, the defendants were and had long prior thereto been in actual possession of lot 7, occupying and using the same as their homestead; that the mortgage had been executed by the defendants to secure a loan to defendant Thompson, but that the agents of the mortgage company had full knowledge at and prior to the execution of the mortgage of the fact that defendants were occupying said lot as their homestead, and hence by reason of such facts they were entitled to their homestead exemption, and the mortgage and sale thereunder was void.

In reply by supplemental petition, plaintiff denied notice of defendants' alleged homestead rights, and further alleged that, at the time they secured the deed of trust through which they were claiming title, the property was incumbered with a valid lien to secure a note for $300, and also a note for $1,000, and further that they paid off another vendor's lien note covering the lot, dated the same day they secured the deed of trust, for the sum of $4,700, and that defendants were estopped to claim their asserted homestead right.

Defendants answered by a supplemental answer, in effect acknowledging the validity of the $300 and $1,000 notes by averring that they had paid thereon the sum of $763.20; the balance due on these two notes being tendered to the plaintiff in open court. Defend-

ants further alleged that said note for $4,700 was a fictitious note growing out of a simulated and pretended sale of the property, made at the instance and request of plaintiff, and that said note and the attendant circumstances surrounding the same were well known to the plaintiff, as well as to its agents and representatives, having full knowledge that such pretended lien was illegal and void.

The case was submitted to the jury upon two special issues, which, together with the answers of the jury thereto, read as follows:

"1. Do you find from a preponderance of the evidence that the agent or agents of the plaintiff making the loan believed that the recitals in the deed from Jarvis to Thompson, dated December 21, 1928, were true, and relied thereon in making the loan to Thompson and wife? Answer: Yes.

"2. Do you find from a preponderance of the evidence that the agent or agents of the plaintiff loan company prior to December 21, 1928, had knowledge or notice of facts or circumstances which would have put a reasonably diligent man upon inquiry, which if prosecuted with reasonable diligence would have given them knowledge of the true state of the title to the property in controversy and that same was the homestead of Thompson and wife prior to said date? Answer: No."

Upon the verdict so rendered, the court entered its judgment in favor of plaintiff for the recovery of the lot in question, together with its improvements, directing the issuance of writs for recovery and possession. From the judgment so rendered the defendants have duly prosecuted this appeal.

Briefly stated, the evidence establishes substantially the following facts: That T. J. Thompson and wife acquired title to lot 7 in controversy and to lot 6 adjoining lot 7 long prior to the dates involved in this controversy; that for a number of years prior to the year 1928 they had occupied lot 6 as their homestead; that some time during the year 1927 defendant T. J. Thompson conveyed to his partner in a real estate business, one D. P. Jarvis, about 30 lots, including lot 7; that this conveyance to Jarvis was without consideration and for convenience only; that later, to wit, in March, 1928, Jarvis reconveyed lot 7 to T. J. Thompson, but this deed of reconveyance to Jarvis was never recorded; that some time in August, 1928, defendant and wife concluded to remove the house on lot 7, then occupied by one of Thompson's tenants, and build thereon a brick building, with the intention of occupying the same when completed as the home of himself and wife; that, pursuant to such purpose, the tenant building was removed and the construction of the brick house on lot 7 was begun; that, when partly completed, the defendants Thompson and wife, during the early part of December, 1928, moved into one room of the brick building in furtherance of their intention of making the building their homestead. At this state of the proceedings the evidence indicates that Thompson had incurred a number of obligations for material of various kinds, and he indicated to one of the agents of the plaintiff a desire to secure a loan on the building for the purpose of discharging the liens securing the notes for $300 and $1,000, and the obligations for material, etc. The record title to lot 7 was at this time in Jarvis, and the testimony of the plaintiff's agent negotiating the loan is to the effect that he was informed by Thompson that his purpose was to buy the lot from Jarvis, who was the owner thereof, and that he, the agent, was not informed, as defendant Thompson testified, of the previous reconveyance from Jarvis to Thompson, or that the defendant Thompson was in fact the owner. The evidence further tends to show that Thompson's application for the loan was accepted; that, as arranged, Jarvis executed a deed to Thompson conveying lot 7 in consideration, among other things, of Thompson assuming the indebtedness of the $300 and $1,000 notes and Thompson's note for $4,700, secured by a lien upon lot 7. Thereupon Thompson and wife executed their obligation for the sum of $6,000, secured by deed of trust in due form, whereupon plaintiff discharged the liens of the $300 and $1,000 notes by payment to the legal holders thereof, and also paid to various materialmen amounts aggregating $————. For the remainder, amounting to $1,489.97, a check was issued payable to Jarvis, but the proceeds of which we infer were in fact received by Thompson.

The evidence in behalf of appellants, had it been credited by the jury, was undoubtedly sufficient to show that the agents or representatives either knew or had knowledge of such facts as would have brought knowledge home to them of the true state of the title to lot 7 and of its homestead character. On the contrary, however, the evidence, which has been carefully considered by us, undoubtedly tends to show that the agents, as they testified, were without such knowledge, and that they fully trusted Thompson's representations and the representations in the trust deed, upon the faith of which the loan in question was made.

The error of the court, if any, in admitting in evidence a certified copy of the trust deed covering the property in question, objected to on the ground that the affidavit of inability to procure the original was not sufficient, seems to have been wholly obviated by the later introduction of the trust deed itself, as it appears on page 24, and following, of the statement of facts.

█ Error is also assigned to the action of the court in permitting the introduction of the trustee's deed covering the loan in con-

troversy. The objection is, in substance, that the deed was not one by the trustees named in the original deed of trust, and that there was no legal evidence offered to show any authority in John C. Roberts, the trustee who executed the trustee's deed, to exercise the powers stated in the deed of trust. However, by referring to the statement of facts, page 30, it is found that the deed of trust expressly provides that: "In case of the inability, refusal or failure of the trustee herein named to act, a successor and substitute may be named, constituted and appointed by the holder of said indebtedness, or by the holders of a majority in amount of said indebtedness, without other formality than an appointment and designation in writing."

And later, as shown in the statement of facts, page 44, is a written instrument signed by the original trustee, acting by its vice president and by the Investors' Syndicate, duly acknowledged and recorded, which expressly provides that, if the original trustee refuses to act, the holder of the indebtedness secured by the trust deed may and does "appoint John C. Roberts as substitute trustee to foreclose and sell the real property described in deed of trust executed by T. J. Thompson and wife, Maggie E. Thompson." Hence the assignment is overruled.

■ Another assignment (the third) insists that the court was in error in refusing to permit the introduction of the evidence as set forth in bill of exception No. 2. By reference to that bill, it seems that appellant sought to prove by the oral testimony of T. J. Thompson the date when he acquired the property in controversy. This was objected to on the ground that the deed was the best evidence and the objection was sustained. We think there can be no doubt of the correctness of this ruling.

Moreover, as appears in the evidence as a whole, it is undisputed that Thompson and wife acquired title to lot 7 long prior to the inception of the negotiations involved in this case, and Thompson was permitted to testify later that prior to the loan he had caused the removal of a rent house from lot 7 and begun the construction of a brick building thereon, with intent of making lot 7 the homestead of himself and wife; and that they were actually occupying a part of the premises at the time and prior to the loan proceedings.

The sufficiency of the evidence to support the findings of the jury in answer to the second issue is also questioned. In the beginning of this opinion, we indicated otherwise. We will not undertake to set forth the evidence in full, but it may be stated briefly that the recitations in the trust deed executed both by Thompson and his wife are wholly inconsistent with the idea that at the time of its execution Thompson was the owner of lot 7.

On the contrary, those recitations are consistent with the theory that Jarvis at the time owned the lot, and that Thompson was intending its purchase with the intention of making it a homestead. The deed was duly executed by both Thompson and his wife, Maggie Thompson, and duly acknowledged by them; and the testimony of the agents of the appellee company is clear to the effect that they acted in making the loan upon the assumption that Jarvis was the owner and altogether without knowledge or notice that Jarvis prior thereto, by an unrecorded deed, had reconveyed the lot to Thompson. For instance, J. M. Stegall, with whom Thompson negotiated the loan, testified that Thompson told him that he was buying the property from Jarvis and that the title stood in Jarvis' name; that he never showed the deed from Jarvis, dated in March; that he never heard of that deed until the case went to trial. We quote the following from his testimony:

"I knew there was a house being erected on this lot, but I understood that Thompson was buying the property from Jarvis, and I knew there was a number of outstanding bills against the property, and I knew they were going to be paid out of the loan. No one raised any objection to paying them out of the loan. The check for the balance, after the payment of these debts, which amounted to about $1400, was made to Jarvis.

"During all of these negotiations, I never had the least suspicion that Thompson was not buying this property from Jarvis, or that it was Thompson's homestead or that he then owned the property. I thought the sale from Jarvis to Thompson was a bona fide sale."

S. E. Holmes, another agent participating in the proceedings for the loan, testified, among other things, in substance, that Thompson told him that the lot was Jarvis' property; that he never heard of a deed from Jarvis to Thompson executed prior to the deed of December 21, 1928; that in making the loan to Thompson they relied on the recitals in the deed from Jarvis to Thompson, dated December 21, 1928, retaining the $4,700; that he relied upon the fact that Jarvis was selling the property to Thompson.

■ Two other witnesses testified that Thompson told them that Jarvis owned the property. So that, while the testimony of Thompson and wife in essential particulars conflicts with that in behalf of appellee just indicated, we cannot say that the evidence is insufficient to support the jury's findings. The jury having been given in the court's instructions the statutory rule that they were the exclusive judges of the credibility of the witnesses and the weight to be given to the testimony, and the jury evidently having credited the testimony in behalf of appellee, the verdict cannot be disturbed.

There was evidence further tending to show that obligations for much of the material in the construction of the house had been incurred by Thompson prior to the loan, and that the loan was desired for the purpose of paying the debts, and it was shown that out of the proceeds of the loan appellee paid a bill of some $2,000 for lumber, $430 for plumbing, $421 for brick, $133.97 for electrical work, $1,316 as principal and interest on the two notes for $300 and $1,000, and $160 for taxes, the remainder, some $1,489.97, being paid to Jarvis, but which Thompson testified was turned over to him. While the evidence fails to show that liens for such material and labor had been formally fixed under statutory rules, they were of a character that could have been so fixed, and it is clearly inferable that Thompson desired the loan to discharge and prevent liens upon the property.

 On the whole, we conclude that the circumstances and findings in this case sufficiently support appellee's plea that appellants were estopped from claiming their homestead rights, and hence that the judgment below should in all things be affirmed.